AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of: )
)
DNA COLLECTION THROUGH SALIVA SWABS AND )
HAIR FROM BERNICE HART TO BE ADMINISTERED ) Case No. 17-M-1298
BY AURORA HEALTH CARE MEDICAL PERSONNEL )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 26 U.S.C. § 5861(d), (e) & (f) and 18 U.S.C. §§ 844(i) and 844(n)

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Rick Hankins, ATF
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: 5/25/17

*Judge's signature*

City and State: Milwaukee, Wisconsin       Honorable William E. Duffin, U.S. Magistrate Judge
*Printed Name and Title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Rick Hankins, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant to collect the hair and an oral swab of saliva from Bernice Hart (DOB: 3/07/1982).

2. I am a Special Agent of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee Field Office. I have been so employed since April 2003. My duties as a Special Agent with ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

3. I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center (Glynco, Georgia), as well as the ATF National Academy. That training included various legal courses related to Constitutional Law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as: interviewing, surveillance, and evidence collection.

4. In addition to my duties as a criminal investigator, I am also an ATF Certified Fire Investigator (CFI). As an ATF CFI, I am tasked with providing expert opinions as to the origin and cause of fires. I obtained the ATF CFI certification in 2009

following a two-year training program that centered on various fire science topics including, but not limited to: chemistry, fire dynamics, and building construction. The two-year ATF CFI certification program consisted of college courses, written exams, research papers, reading assignments, practical training exercises, and test burns of various materials. I am re-certified annually as an ATF CFI. To date, I have participated in over 230 fire scene examinations and have testified as an expert. Additionally, I have been certified as a fire investigator by the International Association of Arson Investigators since June 2011. I have received over 1,000 class hours of fire related training. Furthermore, I have been an instructor regarding fire related topics on 38 occasions for the following agencies and institutions: The National Fire Academy (FEMA), International Association of Arson Investigators Chapter 25, Waukesha County Technical College, and Blackhawk Technical College. I have also participated in over 185 live fire training exercises, where I started training fires and observed fire growth and development. Finally, I was a full-time instructor at the ATF National Academy from August 2015 – August 2016, where I taught several topics during Special Agent Basic Training for new ATF recruits. Specifically, I was a primary instructor for the arson block of training at the ATF Academy.

5. I have previously applied for and received search warrants for DNA.

6. Information contained in this affidavit was either obtained directly by me or by other investigators who I believe to be truthful and credible. The facts in this affidavit come from personal observations, training and experience, and information

2

obtained from other investigators and witnesses.

7. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Bernice Hart (DOB: 3/07/1982) hair and DNA is probably present on items used in violation of 26 U.S.C. § 5861(d), (e) & (f) (possess, transfer or making a firearm not registered in the National Firearms Registration and Transfer Record) and 18 U.S.C. §§ 844(i) and 844(n) (conspiracy to commit arson). There is also probable cause to search the person described in Attachment A for evidence as described in Attachment B.

**PROBABLE CAUSE**

*Case Background*

9. On the night of August 13, 2016, and continuing into the morning of August 14, 2016 the city of Milwaukee experienced civil unrest that resulted in numerous arsons. During the civil unrest, suspects set fires that caused damage at the following seven businesses, which were, at the time, engaged in activities affecting interstate commerce: (1) BP Gas Station, 3114 N. Sherman Blvd., Milwaukee; (2) O'Reilly Auto Parts, 3405 W. Fond Du Lac Ave., Milwaukee; (3) Jet Beauty, 3501 W. Burleigh St., Milwaukee; (4) BMO Harris Bank, 3536 W. Fond Du Lac Ave., Milwaukee; (5) PJ's Market, 3079 N. 21st St., Milwaukee; (6) MJM Liquor, 2229 W. Fond Du Lac Ave.;

3

Milwaukee; and (7) Big Jim's Liquor, 2161 W. Hopkins Ave., Milwaukee. The investigation into these seven commercial fires revealed that the fires were intentionally set.

10. The ATF initiated multiple investigations into the suspected arsons, violations of 18 U.S.C. § 844(i). As a result of the investigation, the ATF and other law enforcement conducted multiple witness interviews that indicated the use and possession of Molotov Cocktails during the civil unrest and the days following. A Molotov Cocktail is described as a glass container with a wick that holds a flammable liquid, usually gasoline. The wick is then lit, and the bottle is thrown causing a fire upon impact.

11. On August 16, 2016 at 3284 N. Sherman Blvd., Milwaukee, the Milwaukee Police Department (MPD) recovered a glass bottle containing liquid with a torn black cloth inserted into the opening. I know from training and experience the aforementioned construction is consistent with the destructive device known as a Molotov Cocktail.

12. On August 23, 2016, ATF was contacted regarding suspected Improvised Incendiary Devices (IID) located within a dumpster at 3284 N. Sherman Blvd., Milwaukee. ATF Special Agents traveled to the location and discovered a brown cardboard box holding ten glass bottles containing liquid with cloth rags inserted into the openings. The responding agents smelled a strong odor of a petroleum distillate emanating from the dumpster, which is consistent with the presence of gasoline. From

4

Case 2:17-mj-01298-WED    Filed 07/14/17    Page 5 of 19    Document 1

training and experience, the agents identified these devices as Molotov Cocktails. Some of the glass bottles holding the liquid and cloth wicks were labeled as Mike's Hard Lemonade, Everfresh Juice, Mystic, and Seagram's Wine Coolers.

13. The building manager for 3284 N. Sherman Blvd., Milwaukee gave to law enforcement two apartment complex surveillance videos from August 15, 2016 and August 16, 2016.

14. The first video showed, on August 16, 2016 an unknown person who appeared to drop off an item in the location where officers recovered a single Molotov Cocktail on August 16, 2016. The second video showed, on August 15, 2016, an unknown person who carried a brown box by the dumpster next to the apartment complex, which is consistent to where officers recovered a brown box containing multiple Molotov Cocktails on August 23, 2016. The above-referenced apartment complex videos showed that both unknown persons walked in the area of Charles N. Edwards' (DOB: 9/28/1964) apartment, which is located at 3284 N. Sherman Blvd., apartment 2, Milwaukee.

15. On August 23, 2016 while on scene at 3284 N. Sherman Blvd., ATF agents observed a nozzle for a gas can under the porch of 3284 N. Sherman Blvd., apartment 2, Milwaukee. Agents spoke with the resident of this unit who was ultimately identified as Edwards. Edwards explained to agents that this nozzle was part of a gas can that he had for a generator.

16. Agents verified that Edwards resided at 3284 N. Sherman Blvd. apartment 2, Milwaukee. Agents viewed the resident list that verified Edwards resided at 3284 N. Sherman Blvd., apartment 2, Milwaukee. Agents spoke to the apartment manager who verified Edwards' resided at 3284 N. Sherman Blvd., apartment 2, Milwaukee. Agents also spoke to Edwards who was interviewed within apartment 2.

17. On August 30, 2016, Milwaukee County Judge Timothy Witkowiak signed a search warrant for Edwards' residence located at 3284 N. Sherman Blvd., apartment #2, Milwaukee, to search for evidence of narcotics and guns.

18. During the search of Edwards' residence, law enforcement agents located, inside of Edwards' bedroom, one empty gas can and one gas can with gasoline remnants. Agents also located, in the apartment's porch and yard area, scissors, a gas can nozzle, and bottle caps that were consistent with the types of bottles used to construct the Molotov Cocktails that were recovered on August 23, 2016. Agents also located, in the apartment's porch and yard area, fabric that was consistent with the wicks used to construct the Molotov Cocktails that were recovered on August 23, 2016.

19. An Afton Chemical Laboratory examination compared gasoline samples from eight of the Molotov Cocktails that were recovered on August 23, 2016 to the gasoline that was recovered inside of Edwards' bedroom. The examination showed that all nine samples "definitively and unmistakably contain exactly the same gasoline additive system. Hence, all of the samples may have originated from a common source."

6

20. Information was developed through the course of the investigation that led to A.T. On September 14, 2016, A.T. was questioned by law enforcement agents. A.T. stated he was at the BP Gas Station, located at 3114 N. Sherman Blvd., Milwaukee, on the evening of August 13, 2016. A.T. explained that he threw a Molotov Cocktail onto a car, which was parked in the BP Gas Station parking lot. A.T. described the Molotov Cocktail as a "bottle with fire in them". A.T. further stated he was given the Molotov Cocktail by R.M. A.T. stated on August 13, 2016, R.M. threw a Molotov Cocktail into the rear door of the BP Gas Station, which ignited the storage room. A.T. stated that R.M. was provided several Molotov Cocktails from Edwards, a man who is in a wheelchair. A.T. identified Edwards through a photo. A.T. stated R.M. told him that Edwards had numerous Molotov Cocktails in a bag that was on his wheelchair. A.T. stated that "Gabby" was at the BP Gas Station fire with Van Mayes (DOB: 3/1/1987). Through photos, A.T. identified Edwards, Van Mayes, and he identified "Gabby" as Bernice Hart. Much of A.T.'s statement was corroborated by later witnesses and was generally consistent with evidence known or recovered by ATF agents.

21. Your affiant has personal knowledge that Charles Edwards uses a wheelchair.

22. Your affiant later identified "Gabby" as Bernice Hart (DOB: 3/07/1982). Multiple witnesses identified the Facebook profile photo for "Gab Taylor" as the Gabby who worked with Van Mayes in Sherman Park. The Facebook profile photographs for

7

Gab Taylor match the likeness of the Milwaukee Police Department booking photograph for Bernice Hart (DOB: 3/7/1982).

23. Information was further obtained through an interview with J.P. J.P. stated that he saw Mayes and Gabby (AKA Hart) at the BP gas station when it was on fire. J.P stated he was present at Edwards' apartment within days after the riots. J.P. said he witnessed Molotov Cocktails being manufactured in the presence of Edwards. J.P. further stated that Edwards provided the knife that was used to cut the wicks for the Molotov Cocktails. J.P. also observed a bag of rocks, which were to be thrown at police as a diversion so that others could throw Molotov Cocktails at the Milwaukee Police Department station, which is a building affecting interstate commerce. J.P further identified Derrick Madlock as someone who helped make the Molotov Cocktails and was coordinating the diversion. J.P further stated that the Molotov Cocktails were placed inside a red truck that he knows belongs to and is driven by Corey Miles. Through photos, J.P. identified Edwards, Madlock, Miles, and Gabby as Bernice Hart. J.P. did not see everyone's face who was at Edwards' residence, and he did not recall seeing Mayes, Miles, or K.H. there. J.P.'s statement is generally consistent with A.T.'s statement and was generally consistent with the evidence previously known or recovered by ATF agents.

24. K.H. stated he and J.P. walked over to Edwards' residence and were present at Edwards' apartment, and K.H. witnessed Van Mayes manufacturing Molotov Cocktails within days after the riots. K.H. stated that "Gabby" was involved in the

8

discussion at Edward's house when Van Mayes was making Molotov Cocktails. K.H. saw a bag of rocks next to Mayes. K.H. also heard people talking about a plan to bomb the police station. K.H. said that "Gabby" stated the bombing could not occur on that night because someone could get hurt or arrested. Through photos, K.H. identified Edwards, Mayes, and he identified "Gabby" as Hart. K.H.'s statement is generally consistent with A.T.'s and J.P.'s statement and was generally consistent with the evidence previously known or recovered by ATF agents.

25. On August 29, 2016, law enforcement conducted a search warrant at the residence of Van L. Mayes, which was located at 2746A N. 49th Street, Milwaukee. Law enforcement agents observed a full bottle of a Seagram's Wine Cooler and one empty bottle of Everfresh Juice. These bottles were consistent with the types of bottles used in the construction of the Molotov Cocktails recovered by law enforcement on August 23, 2016 from the dumpster located at 3284 N. Sherman Blvd., Milwaukee. During the search warrant, Mayes told law enforcement agents that he transported two gasoline cans and empty glass bottles to a man named "Charles" who uses a wheelchair and resides around Sherman Blvd., Milwaukee. Mayes further stated that he left the two cans of gasoline at Charles' residence. Mayes also said he learned that ATF had taken wine coolers and other bottles from Charles Edwards' home, and further stated those bottles had come from his house.

26. Mayes stated that no one else drank from his bottles other than himself and his live-in girlfriend, Alexis Brooks.

9

27. On February 9, 2017, I interviewed Derrick Madlock (DOB: 4/25/1977). Upon meeting Madlock, I noticed a distinct scar that ran across the bridge of Madlock's nose, which was darker in color than the rest of his nose. Also, Madlock has dreadlocks. Affiant believes that J.P.'s physical description of the man filling bottles with gasoline at Edwards' residence is similar to Madlock's scar on his nose and dreadlocks.

28. Madlock stated he volunteered at Sherman Park with Van Mayes. Madlock said he was at Sherman Park on the night of the riots and witnessed fires at the BP gas station. Madlock subsequently confirmed he knew Charles Edwards. When asked what Edwards had told him about ATF, Madlock said Edwards told him that Edwards was being investigated. Madlock further said Edwards told him, "You all don't have to worry about nothing." Madlock said he was confused as to why Edwards kept insisting Madlock didn't have anything to worry about because he claimed that he had done nothing wrong.

29. Madlock said that he heard Edwards had got out of jail, and he was skeptical about why Edwards had been released. Madlock further said that Edwards then showed up at Sherman Park and asked for everyone to hear him out. Madlock said he told Edwards to stay away from him, and that's when he and Mayes went to Edwards' apartment where Edwards told them both that they had nothing to worry about. Madlock said Edwards told Mayes and him that people were snitching on Edwards but Madlock and Mayes were "good."

10

30. Madlock stated that he took videos on the night of the Sherman Park riots on August 13, 2016 and posted those videos to Facebook. Madlock stated that somehow those videos mysteriously disappeared from his Facebook account. Madlock claimed he doesn't have access to Facebook anymore. Madlock further said that his Facebook account, which was "Dee Major", just disappeared.

31. I subsequently located a Facebook profile with an account name of "Derrick Madlock (DeeMajor)" that contained profile photographs that match the image of the Derrick Madlock that is known to me. The Facebook account of "Derrick Madlock (DeeMajor)" was created in 2014 and last updated with a recent photograph of Derrick Madlock on February 5, 2017. I believe that Madlock's Facebook account is thus still active.

32. Madlock admitted to being connected to Van Mayes and Charles Edwards, admitted to using Facebook to post potential evidence of the Sherman Park crimes, and has distinguishing features that are similar to a description provided by witness J.P. of a suspect who was making Molotov Cocktails and was associated with Edwards.

33. ATF again interviewed Madlock on March 24, 2017, and Madlock stated that Edwards recently contacted Madlock via Facebook and sent Madlock a Facebook friend request. Madlock stated that he assumed Edwards was contacting him on behalf of law enforcement. Because he thought Edwards was working with law enforcement,

Madlock stated he told Edwards that Madlock would inform law enforcement of any "shit" that Edwards was involved in.

34. On January 4, 2017, ATF agents interviewed Corey Miles (DOB: 2/18/1983). Miles admitted to being associated with Van Mayes and the group that ran picnics in Sherman Park. Miles also admitted knowing J.P., and Miles stated that he recently allowed J.P. to live with him for several weeks. Miles admitted to driving a red truck and stated that no one else would drive his red truck except Marie Weeks. Miles admitted that he was present during the riots on August 13, but denied doing anything illegal. Miles admitted to being at Edwards' apartment, but he did not believe he was there the week after the riot. When asked if he saw Molotov Cocktails being made, Miles initially denied knowledge but then stated that he wanted to speak to an attorney. Through vehicle registration information, ATF agents verified that Miles has a current vehicle registration in Wisconsin for a red GMC Yukon with Wisconsin license plate 531-THD. On December 30, 2016, ATF spoke with Marie Weeks whom stated on the night of the riots, she wheeled Edwards' home in his wheelchair.

35. Affiant believes based on witness statements that the Molotov Cocktails that were manufactured at Edwards' residence were the same Molotov Cocktails located in the dumpster on August 26, 2016. J.P. stated that these Molotov Cocktails were placed in Miles' red truck, which Miles admitted that he was one of only two people who would drive the vehicle. J.P. also recently lived with Miles and is familiar with Miles' red truck. If the Molotov Cocktails were placed in Miles' vehicle, it is

12

probable that he touched the Molotov Cocktails or his items the vehicle touched the bottles.

36. Your affiant also interviewed Q.T. Q.T. stated that Gab Taylor in-boxed him on Facebook sometime after the riots. Q.T. stated that he went to Gab Taylor's house after he received the Facebook message from her. When he arrived at her house, Q.T. said Gab Taylor told Q.T. that she was present at Edwards' apartment when the police recovered a Molotov Cocktail. Police then questioned her and others about gas cans near Edwards' apartment. Q.T. said Gab Taylor told him that "they covered up" the presence of the gas cans by telling law enforcement agents that the gas cans were used for Edwards' generator.

37. Q.T. further said he met with Edwards after Edwards was released from jail shortly after the riots. Q.T stated Edwards sent him a Facebook message, and Q.T met Edwards at Sherman Park. At that meeting, Q.T said Edwards told him that Edwards believed kids had given information to the ATF. Q.T stated that Edwards told him that Van Mayes had convinced some kids "to do some stuff." Q.T also said Edwards told him that Edwards had possessed some Molotov Cocktails and Van Mayes was behind some "stuff." Through photos, Q.T. identified Edwards, Mayes, Madlock, and he identified "Gab Taylor" as Hart.

38. An inquiry into the National Firearm Registration and Transfer Record revealed that Charles N. Edwards, Derrick Madlock, Corey Miles, Bernice Hart, and Van Mayes were not of record.

13

39. Affiant is aware that Mayes lists his home address on his DOT record as 2746A N. 49th St., in the city and county of Milwaukee, WI.

40. Affiant is aware that Miles told ATF agents that he lives at 5279 N. 64th Street, in the city and county of Milwaukee, WI.

41. Affiant is aware that Hart self-reported her address to MPD as 2921 N. 47th Street, in the city and county of Milwaukee, WI.

42. Affiant is aware that Madlock self-reported his address to ATF as 4355 N. 104th St., in the city and county of Milwaukee, WI.

43. On April 24, 2017, I was notified by the ATF Forensic Laboratory of the following findings: a male DNA profile was located on scissors found on the ground outside Edwards' apartment; a female DNA profile was found on a Mike's Hard Lemonade bottle cap located on Edwards' property; a second female DNA profile found on gas can #1 located in Edwards' bedroom; a third female DNA profile found on gas can #1 located in Edwards' bedroom; and a second male DNA profile found on gas can #2 located in Edwards' bedroom. Furthermore, ATF Forensic Laboratory located human hairs or human hair fragments on the cloth believed to be used to manufacture the Molotov Cocktails. All of these human hairs were suitable for DNA analysis and some may be suitable for microscopical comparison.

44. Based on my training and experience, I know that by comparing the DNA collected from distinct items believed to be worn or touched with the DNA of a suspect,

it is possible to determine whether the suspect is likely to be the person who wore or touched an item.

45. Your affiant intends that a buccal swab DNA kit be used to obtain the DNA buccal swab from Edwards, Mayes, Madlock, Miles, and Hart. Your affiant and/or another law enforcement officer involved in this investigation will secure a buccal swab by swabbing the inside of Edwards, Mayes, Madlock, Miles, and Hart's mouth for saliva and cells until an adequate sample is obtained. Your affiant and/or another law enforcement officer involved in this investigation will secure Edwards, Mayes, Madlock, Miles, and Hart's hair by brushing and plucking hairs from Edwards, Mayes, Madlock, Miles, and Hart's head and pubic area as is the process directed by the ATF Forensic Laboratory.

## PERSON TO BE SEARCHED AND THINGS TO BE SEIZED

46. The search of the body of Bernice Hart's bodily substances that may constitute evidence of the commission of a crime, specifically: (1) saliva; and (2) approximately 25 hairs combed and plucked from the scalp and pubic area.

47. The search will be conducted at Aurora Sinai Hospital located at 945 N. 12th Street, Milwaukee, WI.

## CONCLUSION

48. Based on the foregoing, the affiant respectfully submits that there is probable cause to believe that Edwards, Mayes, Madlock, Miles, and Hart's have committed violations of 26 U.S.C. § 5861(d), (e) & (f) (possess, transfer or making a

15

firearm not registered in the National Firearms Registration and Transfer Record) and 18 U.S.C. §§ 844(i) and 844(n) (conspiracy to commit arson), and in light of the above information regarding the ATF Forensic Laboratory finding of DNA and human hairs on the Molotov Cocktails and items believed to be used to manufacture the Molotov Cocktails, there is probable cause to believe that obtaining Edwards, Mayes, Madlock, Miles, and Hart's hair and saliva is necessary in order to complete the forensic examination of the items.

49. Your affiant therefore respectfully requests that the attached warrant be issued authorizing the search and seizure of samples of Hart's saliva and head and pubic hair, and saliva, also described in Attachment A.

## ATTACHMENT A
### Property to Be Searched

The search of Bernice Hart's bodily substances that may constitute evidence of the commission of a crime, specifically, (1) saliva; and (2) approximately 25 hairs combed and plucked from the scalp and approximately 25 hairs combed and plucked from the pubic area.

The DNA collection through saliva swabs and hair from Bernice Hart is to be administered by Aurora Health Care Medical personnel.

17

## ATTACHMENT B
## Particular Things to be Seized

Bernice Hart's: (1) saliva; and (2) approximately 25 hairs combed and plucked from the scalp and approximately 25 hairs combed and plucked from the pubic area.